Joshua D. Buck, Nev. Bar No. 12187
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, Nevada 89511
Phone: 775.284.1500
Fax: 775.703.5027
josh@thiermanbuck.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713.352.1100
Fax: 713.352.3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713.877.8788
Fax: 713.877.8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR MITCHELL & THE AIRCRAFT MAINTENANCE EMPLOYEES**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JONATHAN MITCHELL, Individually and for Others Similarly Situated<br><br>v.<br><br>VETERANS ALLIANCE, LLC, a domestic limited liability company | Case No. _____<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND** |

- 1 -

# ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Jonathan Mitchell ("Mitchell") brings this class and collective action to recover unpaid wages and other damages from Veterans Alliance, LLC ("Veterans Alliance").

2. Veterans Alliance employed Mitchell as one of its Aircraft Maintenance Employees (defined below) in Kentucky.

3. Veterans Alliance paid Mitchell and its other Aircraft Maintenance Employees by the hour.

4. Mitchell and the other Aircraft Maintenance Employees regularly worked more than 40 hours a week.

5. But Veterans Alliance did not pay Mitchell and its other Aircraft Maintenance Employees overtime at the proper premium rate.

6. Instead, Veterans Alliance uniformly paid Mitchell and its other Aircraft Maintenance Employees taxable, hourly per diems (only for their first 40 hours worked) that Veterans Alliance intentionally excluded when calculating their regular rates of pay for overtime purposes (Veterans Alliance's "per diem pay scheme").

7. Veterans Alliance's uniform per diem pay scheme violates the Fair Labor Standards Act ("FLSA") by depriving Mitchell and the other Aircraft Maintenance Employees of overtime pay at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for hours worked after 40 in a workweek.

8. Likewise, Veterans Alliance's uniform per diem pay scheme violates the Kentucky Wage and Hour Act ("KWHA") by depriving Mitchell and the other Aircraft Maintenance Employees in Kentucky of overtime pay at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for hours worked after 40 in a workweek.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11. This Court has general personal jurisdiction over Veterans Alliance because Veterans Alliance is a domestic limited liability company headquartered in Stateline, Nevada.

12. Venue is proper because Veterans Alliance is headquartered in Stateline, Nevada, which is in this District. 28 U.S.C. 1391(b)(1).

## PARTIES

13. Mitchell worked for Veterans Alliance as an Aircraft Maintenance Technician (specifically, an A&P Technician) in Erlanger, Kentucky from approximately May 2022 until March 2023.

14. Throughout his employment, Veterans Alliance paid Mitchell under its illegal per diem pay scheme.

15. Mitchell's written consent is attached as **Exhibit 1**.

16. Mitchell brings this class and collective action on behalf of himself and all other similarly situated hourly employees who Veterans Alliance paid under its illegal per diem pay scheme.

17. Veterans Alliance paid each of these employees taxable, hourly per diems (for their first 40 hours worked only) that Veterans Alliance intentionally excluded when calculating their regular rates of pay for overtime purposes.

18. Thus, Veterans Alliance uniformly deprived these employees of overtime wages at the proper premium rate in violation of the FLSA and KWHA.

19. The FLSA Collective of similarly situated employees is defined as:

- 3 -

> **All hourly Veterans Alliance employees who Veterans Alliance paid under its per diem pay scheme at any time in the past 3 years (the "FLSA Collective Members").**

20. Mitchell also seeks to represent such a class under the KWHA pursuant to FED. R. CIV. P. 23.

21. The Kentucky Class of similarly situated employees is defined as:

> **All hourly Veterans Alliance employees in Kentucky who Veterans Alliance paid under its per diem pay scheme at any time during the 5 years prior to the filing of this Complaint and final resolution of this action (the "Kentucky Class Members").**

22. The FLSA Collective Members and Kentucky Class Members are collectively referred to as the "Aircraft Maintenance Employees."

23. Veterans Alliance is a Nevada corporation headquartered in Stateline, Nevada.

24. Veterans Alliance can be served through its officers, directors, managing agents, or general agents at its registered office: **769 Northbowl Lane, Unit A, Stateline, Nevada 89449**.

## FLSA COVERAGE

25. At all relevant times, Veterans Alliance was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. At all relevant times, Veterans Alliance was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

27. At all relevant times, Veterans Alliance was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce.

28. At all relevant times, Veterans Alliance has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29. At all relevant times, Mitchell and the other Aircraft Maintenance Employees were Veterans Alliance's covered "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

30. At all relevant times, Mitchell and the other Aircraft Maintenance Employees were engaged in commerce or in the production of goods for commerce.

31. Veterans Alliance uniformly paid Mitchell and the other Aircraft Maintenance Employees taxable hourly per diems (for their first 40 hours worked only) that Veterans Alliance intentionally excluded when calculating their regular rates of pay for overtime purposes.

32. As a result of Veterans Alliance's per diem pay scheme, Mitchell and the Aircraft Maintenance Employees did not receive overtime at the premium rate required by the FLSA.

33. Specifically, Veterans Alliance did not pay Mitchell and the Aircraft Maintenance Employees at least 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

34. Veterans Alliance's per diem pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

35. Veterans Alliance provides aircraft maintenance staffing services to companies across the country, including in Kentucky.[1]

36. Veterans Alliance is not, and does not purport to be, a common carrier.

37. To provide these staffing services to its customers, Veterans Alliance employs personnel, including Mitchell and the other Aircraft Maintenance Employees.

---

[1] https://www.veterans-alliance.com/ (last visited November 24, 2023).

- 5 -

38. Veterans Alliance "staffs" these workers to companies across the country, including in Kentucky.

39. Veterans Alliance uniformly pays Mitchell and the other Aircraft Maintenance Employees by the hour.

40. Mitchell and the other Aircraft Maintenance Employees regularly work more than 40 hours a week.

41. But Veterans Alliance does not pay Mitchell and the other Aircraft Maintenance Employees overtime wages at the proper premium rate.

42. Instead, Veterans Alliance pays Mitchell and the other Aircraft Maintenance Employees taxable hourly per diems (for their first 40 hours worked only) that Veterans Alliance intentionally excludes when calculating their regular rates of pay for overtime purposes.

43. While exact job titles and job duties may differ, these employees are subject to the same or similar illegal pay practice—Veterans Alliance's illegal per diem pay scheme—for similar work.

44. For example, Mitchell worked for Veterans Alliance as an Aircraft Maintenance Technician (specifically, an A&P Technician) in Erlanger, Kentucky from approximately May 2022 until March 2023.

45. Throughout his employment, Mitchell regularly worked more than 40 hours in a week.

46. Indeed, Mitchell regularly worked 10 to 13 hours a day for at least 4 days a week (or 40 to 46+ hours a week).

47. Mitchell was Veterans Alliance's hourly employee.

48. Mitchell reported his hours worked to Veterans Alliance.

49. Veterans Alliance's records reflect the hours Mitchell worked each week.

50. Despite knowing Mitchell regularly worked overtime, Veterans Alliance did not pay him overtime wages at the proper premium rate.

51. Veterans Alliance tries to mask its overtime violations by giving the appearance of paying overtime.

52. In fact, Veterans Alliance uses a well-known ploy for evading the FLSA's and KWHA's respective overtime requirements.

53. Specifically, Veterans Alliance labeled a large portion of Mitchell's wages as "per diem," (even though it is paid based on his hours worked).

54. When Veterans Alliance hired Mitchell, Veterans Alliance listed his "taxable" wage as approximately $12/hour.

55. Likewise, Veterans Alliance listed Mitchell's "taxable" overtime wage as approximately $36/hour.

56. But Veterans Alliance also paid him a "per diem" of approximately $22/hour for his first 40 hours worked only.

57. This "per diem" is tied to the number of hours Mitchell worked each week.

58. For example, during the workweek ending on February 18, 2023, Mitchell worked 44 hours, and Veterans Alliance paid him $12/hour in "regular pay" plus $22/hour in "per diem" for his first 40 hours worked:



59. Between his "taxable" wages and his so-called "per diem," Mitchell's actual "regular rate" was approximately $34/hour. *See* 29 U.S.C. § 207(e); 803 K.A.R. 1:061.

60. But, as noted above, Mitchell did not receive overtime based on his actual regular rate of approximately $34/hour.

61. Instead, Veterans Alliance paid Mitchell a taxable "overtime wage" of approximately $36/hour:[2]

| | Earnings - Current | | | |
|---|---|---|---|---|
| Date | Pay Description | Pay Rate | Hours/Units Paid | Pay Amount |
| 02-18-2023 | OT HALF RATE | 6.0000 | 4.00 | 24.00 |
| 02-18-2023 | REGULAR PAY | 12.0000 | 40.00 | 480.00 |
| 02-18-2023 | PER DIEM NT | 880.0000 | 1.00 | 880.00 |
| 02-18-2023 | OT REGULAR | 12.0000 | 4.00 | 48.00 |
| 02-18-2023 | OT PLUS | 18.0000 | 4.00 | 72.00 |
| | TOTAL | | 53.00 | 1,504.00 |

62. So rather than receiving approximately $51 an hour for each hour of overtime he worked, Veterans Alliance paid Mitchell overtime wages at a significantly lower rate than the FLSA and KWHA required ($36/hour).

63. In other words, Veterans Alliance failed to pay Mitchell overtime wages at the proper premium rate—based on *all* renumeration received—in willful violation of the FLSA and KWHA.

64. Veterans Alliance pays its other Aircraft Maintenance Employees according to the same illegal per diem pay scheme it imposed on Mitchell.

65. Like Mitchell, Veterans Alliance pays its other Aircraft Maintenance Employees on an hourly basis.

---

[2] Mitchell's "OT Regular" rate ($12/hour) + his "OT Half Rate" ($6/hour) + his "OT Plus" rate ($18/hour).

66. And like Mitchell, Veterans Alliance requires its other Aircraft Maintenance Employees to report their hours worked to Veterans Alliance.

67. Thus, just as Veterans Alliance maintains records of the hours Mitchell worked, it also maintains records of the hours worked by the similarly situated Aircraft Maintenance Employees.

68. Veterans Alliance's records show its Aircraft Maintenance Employees regularly work more than 40 hours a week.

69. Every Aircraft Maintenance Employee worked more than 40 hours in at least one workweek during the last 3 years.

70. Indeed, like Mitchell, the other Aircraft Maintenance Employees typically work 10 to 13 hours a day for at least 4 days a week (or 40 to 46+ hours a week).

71. Despite knowing its Aircraft Maintenance Employees regularly work overtime, Veterans Alliance does not pay them overtime wages at the proper premium rate.

72. Instead, Veterans Alliance pays its Aircraft Maintenance Employees taxable, hourly per diems (for their first 40 hours worked only) that Veterans Alliance intentionally excludes when calculating their regular rates of pay for overtime purposes.

73. As a result, Veterans Alliance uniformly fails to pay Mitchell and its other Aircraft Maintenance Employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for their hours worked over 40 in a workweek in willful violation of the FLSA and KWHA.

**VETERANS ALLIANCE'S WAGE VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA AND KWHA**

74. Mitchell incorporates all other paragraphs by reference.

75. Veterans Alliance knew it was not a common carrier.

76. Veterans Alliance knew it was subject to the FLSA's overtime provisions.

77. Veterans Alliance knew the FLSA required it to pay non-exempt employees, like Mitchell and the other Aircraft Maintenance Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

78. Veterans Alliance knew it was subject to the KWHA's overtime provisions.

79. Veterans Alliance knew the KWHA required it to pay non-exempt employees, like Mitchell and the other Aircraft Maintenance Employees in Kentucky, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

80. Veterans Alliance knew Mitchell and each Aircraft Maintenance Employee worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required these workers to report their hours worked to Veterans Alliance.

81. Veterans Alliance knew Mitchell and the other Aircraft Maintenance Employees were its hourly employees.

82. Veterans Alliance knew it paid Mitchell and its other Aircraft Maintenance Employees on an hourly basis.

83. Veterans Alliance knew it paid Mitchell and its other Aircraft Maintenance Employees an hourly rate plus an hourly per diem (for their first 40 hours worked only).

84. Veterans Alliance knew Mitchell's and its other Aircraft Maintenance Employees' per diems were tied to their respective hours worked.

85. Veterans Alliance knew it included Mitchell's the other Aircraft Maintenance Employees' per diems in their total taxable amount earned on each paystub.

86. Veterans Alliance knew it represented to Mitchell and its other Aircraft Maintenance Employees that their per diems constituted part of their wages.

87. Veterans Alliance knew it represented to the IRS that Mitchell's and the other Aircraft Maintenance Employees' per diems were wages.

88. In other words, Veterans Alliance knowingly classified Mitchell's and the other Aircraft Maintenance Employees' per diems as wages.

89. And Veterans Alliance knew that all of Mitchell's and the other Aircraft Maintenance Employees' wages (including their per diems) were considered renumeration for overtime purposes under the FLSA and KWHA.

90. Nonetheless, Veterans Alliance intentionally excluded Mitchell's and the other Aircraft Maintenance Employees' per diems when calculating their regular rates of pay for overtime purposes in violation of the FLSA and KWHA.

91. Veterans Alliance's decision to exclude Mitchell's and the other Aircraft Maintenance Employees' per diems when calculating their regular rates of pay for overtime purposes was neither reasonable, nor was it made in good faith.

92. Veterans Alliance knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA and KWHA.

93. Veterans Alliance knowingly, willfully, and/or in reckless disregard carried out this illegal per diem pay scheme that systematically deprived the Aircraft Maintenance Employees of overtime wages at the proper premium rate for the hours they worked after 40 in a workweek in violation of the FLSA and KWHA.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

94. Mitchell incorporates all other paragraphs by reference.

95. Like Mitchell, the other Aircraft Maintenance Employees are uniformly victimized by Veterans Alliance's illegal per diem pay scheme.

- 11 -

96. Other Aircraft Maintenance Employees worked with Mitchell and indicated they were paid in the same manner, performed similar work, and were subject to Veterans Alliance's same illegal per diem pay scheme.

97. Based on his experiences, Mitchell is aware Veterans Alliance's illegal per diem pay scheme was imposed on the other Aircraft Maintenance Employees.

98. The Aircraft Maintenance Employees are similarly situated in the most relevant respects.

99. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay at the proper premium rate.

100. The only *relevant* inquiries are whether the Aircraft Maintenance Employees worked more than 40 hours in a week and received per diems (which, by definition, they did).

101. Therefore, the specific job titles or precise job locations of the various Aircraft Maintenance Employees do not prevent class or collective treatment.

102. Rather, Veterans Alliance's illegal per diem pay scheme renders Mitchell and the other Aircraft Maintenance Employees similarly situated for the purposes of determining their right to overtime pay.

103. Veterans Alliance's records reflect the number of hours worked each week by Mitchell and the other Aircraft Maintenance Employees.

104. Veterans Alliance's records also show it paid Mitchell and the other Aircraft Maintenance Employees per diems.

105. Veterans Alliance's records also reflect it excluded Mitchell's and the other Aircraft Maintenance Employees' per diems in calculating their regular rates of pay for overtime purposes.

106. The back wages owed to Mitchell and the other Aircraft Maintenance Employees can therefore be calculated using the same formula applied to the same records.

107. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Veterans Alliance's records, and there is no detraction from the common nucleus of liability facts.

108. Therefore, the issue of damages does not preclude class or collective treatment.

109. Mitchell's experiences are therefore typical of the experiences of the other Aircraft Maintenance Employees.

110. Mitchell has no interest contrary to, or in conflict with, the Aircraft Maintenance Employees that would prevent class or collective treatment.

111. Like each Aircraft Maintenance Employee, Mitchell has an interest in obtaining the unpaid wages owed under federal and Kentucky law.

112. Mitchell and his counsel will fairly and adequately represent the Aircraft Maintenance Employees and their interests.

113. Indeed, Mitchell retained counsel with significant experience in complex class and collective action litigation.

114. A class and collective action is superior to other available means for fair and efficient adjudication of the lawsuit.

115. Absent this class and collective action, many Aircraft Maintenance Employees will not obtain redress for their injuries, and Veterans Alliance will reap the unjust benefits of violating the FLSA and KWHA.

116. Further, even if some of the Aircraft Maintenance Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

117. Indeed, the multiplicity of actions would create a hardship to the Aircraft Maintenance Employees, the Court, and Veterans Alliance.

118. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Aircraft Maintenance Employees' claims.

119. The questions of law and fact that are common to each Aircraft Maintenance Employee predominate over any questions affecting solely the individual members.

120. Among the common questions of law and fact are:

   a. Whether Veterans Alliance excluded the Aircraft Maintenance Employees' per diems when calculating their regular rates of pay for overtime purposes;

   b. Whether Veterans Alliance's per diem pay scheme deprived the Aircraft Maintenance Employees of the premium overtime wages they are owed under the FLSA and KWHA;

   c. Whether Veterans Alliance's decision to exclude the Aircraft Maintenance Employees' per diems from their regular rates of pay for overtime purposes was made in good faith;

   d. Whether Veterans Alliance's decision not to pay the Aircraft Maintenance Employees overtime wages at the proper premium rate (based on *all* renumeration received) was made in good faith; and

   e. Whether Veterans Alliance's FLSA and KWHA violations were willful.

121. Mitchell knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

122. As part of its regular business practices, Veterans Alliance intentionally, willfully, and repeatedly violated the FLSA and KWHA with respect to Mitchell and the other Aircraft Maintenance Employees.

123. Veterans Alliance's illegal per diem pay scheme deprived Mitchell and the other Aircraft Maintenance Employees of the premium overtime wages they are owed under federal and Kentucky law.

124. There are many similarly situated Aircraft Maintenance Employees who have been denied overtime pay at the proper premium rate in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

125. The Aircraft Maintenance Employees are known to Veterans Alliance, are readily identifiable, and can be located through Veterans Alliance's business and personnel records.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

126. Mitchell incorporates all other paragraphs by reference.

127. Mitchell brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

128. Veterans Alliance violated, and is violating, the FLSA by employing non-exempt employees (Mitchell and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for the hours they worked after 40 in a workweek. 29 U.S.C. § 207(a).

129. Veterans Alliance's unlawful conduct harmed Mitchell and the other FLSA Collective Members by depriving them of the proper premium overtime wages they are owed.

130. Accordingly, Veterans Alliance owes Mitchell and the other FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

131. Because Veterans Alliance knew, or showed reckless disregard for whether, its pay practice violated the FLSA, Veterans Alliance owes these wages for at least the past 3 years.

132. Veterans Alliance is also liable to Mitchell and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

133. Finally, Mitchell and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE KWHA
### (KENTUCKY CLASS)

134. Mitchell incorporates all other paragraphs by reference.

135. Mitchell brings his KWHA claim on behalf of himself and the other Kentucky Class Members pursuant to FED. R. CIV. P. 23.

136. The conduct alleged in this Complaint violates the KWHA. *See* K.R.S. §§ 331.010, *et seq.*

137. At all relevant times, Veterans Alliance was an "employer" within the meaning of the KWHA. *See* K.R.S. § 337.010(1)(d).

138. At all relevant times, Veterans Alliance employed Mitchell and the other Kentucky Class Members as its covered "employees" within the meaning of the KWHA. *See* K.R.S. § 337.010(1)(e).

139. The KWHA requires employers, like Veterans Alliance, to pay non-exempt employees, like Mitchell and the other Kentucky Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked over 40 in a workweek. *See* K.R.S. § 337.285.

140. Mitchell and the other Kentucky Class Members are entitled to overtime wages under the KWHA. *See* K.R.S. § 337.285.

141. Veterans Alliance violated, and is violating, the KWHA by employing non-exempt employees (Mitchell and the other Kentucky Class Members) for workweeks longer than 40 hours

without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for the hours they worked after 40 in a workweek. *See* K.R.S. § 337.285; 803 K.A.R. 1:061.

142. Veterans Alliance's unlawful conduct harmed Mitchell and the other Kentucky Class Members by depriving them of the premium overtime wages they are owed.

143. Accordingly, Veterans Alliance owes Mitchell and the other Kentucky Class Members the difference between the rate actually paid and the proper overtime rate, which to-date, remains outstanding. *See* K.R.S. § 337.385(1).

144. In violating the KWHA, Veterans Alliance acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Kentucky law.

145. Thus, Veterans Alliance is also liable to Mitchell and the other Kentucky Class Members for an additional amount equal to all unpaid wages as liquidated damages. *See* K.R.S. § 337.385(1).

146. Finally, Mitchell and the other Kentucky Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* K.R.S. § 337.385(1).

**JURY DEMAND**

147. Mitchell demands a trial by jury on all County.

**RELIEF SOUGHT**

WHEREFORE, Mitchell, individually and on behalf of the other Aircraft Maintenance Employees, seeks the following relief:

 a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

 b. An Order certifying a class action pursuant to Fed. R. Civ. P. 23;

     c.     An Order appointing Mitchell and his counsel to represent the interests of the Aircraft Maintenance Employees;

     d.     An Order finding Veterans Alliance liable to Mitchell and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

     e.     An Order finding Veterans Alliance liable to Mitchell and the other Kentucky Class Members for unpaid overtime wages owed under the KWHA, plus liquidated damages in an amount equal to their unpaid wages;

     f.     An Order awarding attorneys' fees, costs, and expenses available under the FLSA and KWHA;

     g.     A Judgment against Veterans Alliance awarding Mitchell and the other Aircraft Maintenance Employees all their unpaid overtime wages, liquidated damages, attorneys' fees, costs, expenses, and any other penalties available under the FLSA and KWHA;

     h.     An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

     i.     All such other and further relief to which Mitchell and the Aircraft Maintenance Employees may show themselves to be justly entitled.

| | |
|---|---|
| Dated: December 4, 2023. | Respectfully submitted,<br><br>**THIERMAN BUCK LLP**<br><br>By: /s/*Joshua D. Buck*<br>        Joshua D. Buck<br>        Nev. Bar No. 12187<br>7287 Lakeside Drive<br>Reno, Nevada 89511<br>Phone: 775.284.1500<br>Fax: 775.703.5027<br>josh@thiermanbuck.com<br><br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: 713-352-1100<br>Fax: 713-352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: 713-877-8788<br>Fax: 713-877-8065<br>rburch@brucknerburch.com<br><br>*Pro hac vice applications forthcoming*<br><br>**ATTORNEYS FOR MITCHELL & THE AIRCRAFT MAINTENANCE EMPLOYEES** |