UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JONATHAN MITCHELL, individually and on behalf of others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br>　v.<br>VETERANS ALLIANCE, LLC,<br>　　　　　　　　　Defendant. | Case No. 3:23-cv-00617-ART-CLB<br><br>ORDER |

Plaintiff Jonathan Mitchell brings this class and collective action seeking to recover unpaid wages from Defendant Veterans Alliance, LLC ("Veterans"). Veterans moves to compel arbitration and dismiss the action, arguing that Mitchell signed a valid arbitration agreement. (ECF No. 17.) Mitchell opposes arbitration, asserting that he never saw or signed the alleged arbitration agreement.

**I.    BACKGROUND**

Mitchell was employed by Veterans as an aircraft maintenance technician in Kentucky from June 2022 until March 2023. (ECF No. 28-1 at 2.) Mitchell claims that he and other aircraft maintenance employees at Veterans regularly worked more than 40 hours a week and Veterans did not pay the employees overtime at the proper rate. (ECF No. 1 at 2.) Mitchell claims that Veterans' pay scheme violates the Fair Labor Standards Act ("FLSA") and the Kentucky Wage and Hour Act ("KWHA"). (*Id.*)

Mitchell signed an employment agreement outlining his start date, assignment, position, and wage information. (ECF No. 28-1 at 6.) The employment agreement contains Mitchell's signature and a time stamp indicating

1

that it was signed on May 24, 2022 at 16:03:16 EDT. (*Id.*) Veterans claims that Mitchell also signed an arbitration agreement on that day. (ECF Nos. 17 at 4–5; 17.) Mitchell denies ever seeing or signing the agreement. (ECF Nos. 28 at 3; 28-1 at 2–3.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires courts to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Accordingly, "the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Id.* (*quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Because an agreement to arbitrate is a matter of contract, to determine whether a contract exists, courts "generally . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1057 (D. Nev. 2019) (citing *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). In deciding a motion to compel, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Accordingly, the Court will hold a contract to arbitrate was formed if Veterans demonstrates, while viewing the evidence in the light most favorable to Plaintiff, "there is no genuine dispute as to any material fact" as to the formation of the arbitration agreement. Fed. R. Civ. Pro. 56(a); *see also Hansen*, 1 F.4th at 672 (a district court considering a motion to compel arbitration must "give to the opposing party the

benefit of all reasonable doubts and inferences that may arise"); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) (same).

### III. DISCUSSION

#### A. Whether a valid agreement to arbitrate exists

Upon review of the submitted evidence, the Court finds that Defendant has failed to establish by a preponderance of the evidence that Mitchell signed the arbitration agreement.

Defendant moves to compel arbitration of this dispute on the basis that Mitchell electronically signed and entered into an arbitration agreement as a condition of his employment. In the motion to compel, Defendant submits a copy of the arbitration agreement and a declaration by Muang Le, Director of Compliance for Veterans. (ECF Nos. 17-1; 17-2.) In response, Mitchell argues that Veterans has failed to meet its burden of proving that it has an arbitration agreement with Mitchell. (ECF No. 28.) Mitchell submits a declaration stating that he does not recall ever seeing or signing the alleged arbitration agreement, that he searched his emails for it and could not find it, and that the signature at the bottom of the agreement is not his. (ECF No. 28-1 at 2–3.) Veterans replies with a declaration by Pathik Mody, Chief Technology Officer of Trion, and screenshots of the Trion platform purportedly showing that Mitchell signed an arbitration agreement on May 24, 2022. (ECF No. 29.) In a surreply, Mitchell argues that the additional evidence fails to establish that the alleged signature was Mitchell's act. (ECF No. 34.)

Nevada law recognizes electronic signatures "if they are the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure" that applies to the electronic signature process. *Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *1 (9th Cir. Aug. 19, 2021) (citing Cal. Cal. Civ. Code § 1633.9(a) and Nev. Rev. Stat. § 719.260(1)).

1    Courts have compelled arbitration where the declarations provided detailed information explaining how the employee signed an arbitration agreement and how defendant can ascertain that the signature was an act of the plaintiff's. *See Zamudio v. Aerotek, Inc.*, 698 F. Supp. 3d 1202, 1208 (E.D. Cal. 2023) (compiling California cases). In *Gonzales v. Sitel Operating Corporation*, defendant met its burden where it provided a declaration explaining the online procedures it used when hiring plaintiff, provided an electronic signature certificate showing plaintiff's profile, and explained that only with the PIN plaintiff created via that profile would her name be affixed on documents alongside a time stamp. No. 219CV00876GMNVCF, 2020 WL 96900, at *3 (D. Nev. Jan. 7, 2020). In *Mwithiga v. Uber Technologies*, defendant met its burden where it provided a declaration explaining that in order to use the Uber App to connect with riders, a driver must accept the arbitration agreement twice, and that upon acceptance, an electronic receipt is generated with a date and time stamp. 376 F. Supp. 3d 1052, 1059 (D. Nev. 2019). In the face of that evidence, the plaintiff's speculation that someone other than himself accepted the agreement from his own phone was not sufficient to raise a genuine issue of material fact. *Id.* at 1060.

Courts have refused to compel arbitration where the declarations submitted summarily assert that the employee signed the agreement. *See Zamudio*, 698 F. Supp. 3d at 1208 (collecting cases). In *Zamudio*, a declaration by an employee relations manager stating that he had reviewed plaintiff's personnel files and found that she had completed her onboarding documents lacked sufficient detail to authenticate the signature on the arbitration agreement as plaintiff's. *Id.* at 1209. In *Ruiz v. Moss Bros. Auto Group*, defendant's assertions that it presents the arbitration agreement to all new employees and that each employee is required to log into the HR system with a unique login ID and password to review and electronically execute the arbitration agreement were

1  similarly insufficient to authenticate the signature as plaintiff's. 232 Cal. App.
2  4th 836, 839 (2014).

3  Here, Le's declaration supports the conclusion that Mitchell created an
4  account in Trion during the onboarding process but does not sufficiently explain
5  her conclusion that Mitchell personally signed the arbitration agreement. Le
6  asserts that based upon her review of the arbitration agreement and
7  "understanding of the way Veterans' employment documents are signed and
8  executed, [she is] confident that Mr. Mitchell electronically signed and executed
9  these documents, including the arbitration agreement." (ECF No. 17-1 at ¶ 19.)
10 Le explains that after Mitchell accepted the offer of employment at Veterans, she
11 entered his name, email address, and assignment start date into the Trion
12 system. (*Id.* at ¶ 21.) The onboarding portal then automatically sent Mitchell a
13 welcome email with a link which, when clicked on, prompted Mitchell to create a
14 unique username and password. (*Id.* at ¶ 22.) "To create a Trion account, Mitchell
15 was required to input his first name, last name, social security number, and a
16 unique username and password of his choosing." (*Id.*) No one at Veterans received
17 a copy of this password. (*Id.* at ¶ 24.) Le states that she knows that Mitchell
18 clicked on the link and created a username and password because she can "view
19 activity by Veterans' employees in the Trion system, including the dates when a
20 user engages in those actions" and is "notified by Trion whenever any Veterans
21 employee signs any documents which are presented to him or her for signature
22 on Trion." (*Id.*) Le states that she viewed Mitchell's activity on Trion and saw that
23 he "created his unique username and password on May 24, 2022 and
24 electronically signed the arbitration agreement on May 24, 2022." (*Id.*) But she
25 does not provide a screenshot of this page in Trion. Le also states that employees
26 of Veterans are not permitted to work for the company unless and until they have
27 signed the company's arbitration agreement. (*Id.*)
28

5

Le's declaration is more akin to those described in *Zamudio* and *Ruiz* then those in *Gonzales* and *Mwithiga*. Unlike the procedures describes in *Gonzales*, Le does not describe any procedure that creates an electronic signature certificate or affixes a timestamp to an agreement upon signing. Le's declaration does not explain why just one of the documents apparently signed through its platform has freely editable date and signature fields and lacks a timestamp. And while Le asserts that employees are not permitted to work for the company until they have signed the agreement, she does not describe any system, like that in *Mwithiga*, which prevents employees from working before they have signed the agreement.

Mody's declaration adds some, though inconclusive, support for the conclusion that Mitchell signed the agreement. As the declaration explains, the IP address on the agreement matches the IP address on other onboarding documents. But significantly, unlike the arbitration agreement, the other signed forms are not freely editable. Mody states that Trion's data "reflects that Mr. Mitchell signed all of the onboarding documents requiring by Veterans, including the arbitration agreement, on May 24, 2022 from IP address 68.39.193.30. (ECF No. 29-1 at ¶ 7.) He states that the arbitration agreement, when viewed in the Trion system, displays Mitchell's name and IP address. (*Id.* at ¶ 8.) But Mody's declaration fails to explain why, although the IP address is the same, the arbitration agreement differs in significant ways from the other onboarding documents. The signature fields on the employment agreement and tax residence questionnaire contain date and time stamps, are either in a cursive font or handwritten, and are not freely editable. (ECF No. 28-1 at 6–7.) The signature fields on the employee handbook, I-9, and W-4, are also not freely editable. (ECF No. 29-4 at 2, 3, 6.) The signature and date fields on the arbitration agreement, by contrast, are freely editable and do not contain a time stamp or any other electronic signature verification. (ECF No. 28-1 at 9–11.)

      Defendant also offers evidence from the Trion system, but this evidence fails to support their position. Mody asserts that two screenshots from Trion "together show that Mr. Mitchell completed and signed his arbitration agreement with Veterans on May 24, 2022." (*Id.* at ¶ 9.) However, these documents do not support Mody's conclusion. The first screenshot, a "Document Review" report, contains a list of documents, including an arbitration agreement, but does not show Mitchell's name. (ECF No. 29-3 at 2.) The only name on the page is "Denise Menke," who appears to be logged in to the Trion system. (*Id.*) This page could be the "Document Review" of any employee. The second screenshot, which appears to be the "On-Boarding Audit" report, shows Mitchell's name and lists nine "Tasks," including several types of documents, all of which have been "completed." (ECF No. 29-3 at 3.) Crucially, though, this list does not include arbitration agreement. (*Id.*) Neither screenshot contains both Mitchell's name and a reference to an arbitration agreement.

      These Trion screenshots differ significantly from those provided in *Gonzales*, where defendant provided records identifying the specific document signed by numbers and codes, date and time stamps, signers' names, and storage identification numbers. *Gonzales*, No. 219CV00876GMNVCF, 2020 WL 96900, at *3, ECF No. 15-9 at 2. Because neither document includes both the arbitration agreement and Mitchell's name, and because defendant has failed to explain the significant differences between the arbitration agreement and other onboarding documents that Mitchell signed, including the freely editable signature field, factual disputes remain which preclude the Court from granting defendant's motion to compel. Drawing all reasonable inferences in Mitchell's favor, the Court finds that there are genuine disputes of material fact as to whether Mitchell signed this arbitration agreement.

Because the Court has not found that there is a valid arbitration agreement, it need not address the subsequent issues of whether the arbitration agreement is unconscionable or whether it encompasses Mitchell's complaint.

### B. Mitchell's demand for a jury trial to determine arbitrability

The Federal Arbitration Act "makes clear that '[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.'" *Hansen*, 1 F.4th at 672 (quoting 9 U.S.C. § 4). "To implement this language, once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Id.*

The Ninth Circuit has "confirmed that the FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary." *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 833 (9th Cir. 2022). The present motion to compel arbitration is akin to the first phase: a motion to dismiss. As Veterans did not show it had an agreement to arbitrate with Plaintiffs as a matter of law, the case moves to the next phase: discovery. After discovery, the parties will brief— under the summary judgment standard—whether the record establishes as a matter of law Mitchell entered into an arbitration agreement with Veterans. If there remains a genuine dispute, the case will proceed to trial on the issue of the making of an arbitration agreement.

### IV. Conclusion

The Court therefore DENIES Defendant's motions to compel arbitration (ECF No. 17) without prejudice.

The Court orders parties to meet and confer and file a status report within 30 days. The status report should address the schedule for any additional discovery, the deadline for filing a renewed motion to compel arbitration, and the parties' respective positions on trial.

DATED: March 17, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE